UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION
CIVIL ACTION NO. 3:16CV-00776-DW

**REGINALD RILEY**                                                                                          **PLAINTIFF**

**VS.**

**NANCY A. BERRYHILL, Acting
Commissioner of Social Security**                                                 **DEFENDANT**

## MEMORANDUM OPINION AND ORDER

The Commissioner of Social Security denied Reginald Riley's application for disability insurance benefits. Riley seeks judicial review of the Commissioner's decision pursuant to 42 U.S.C. § 405(g). Both Riley (DN 16) and the Commissioner (DN 19) have filed a Fact and Law Summary. Pursuant to 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73, the parties have consented to the undersigned United States Magistrate Judge conducting all further proceedings in this case, including issuance of a memorandum opinion and entry of judgment, with direct review by the Sixth Circuit Court of Appeals in the event an appeal is filed. (DN 13).

### Background

Reginald Riley ("Riley") is 48-years-old and lives with his wife in Radcliff, Kentucky. (Tr. 36, 49). Until 2009, Riley worked as an armored crewman for the U.S. Army at Fort Knox. (Tr. 36). Three years later, Riley completed his Bachelor's degree in Resource Management from Sullivan University with hopes of finding work that would be efficient for his medical conditions

at that time. (Tr. 36-37, 64). Ultimately, Riley felt he was "unable to do anything . . . as far as any type of work," because he's in pain "pretty much all of the time." (Tr. 64). Riley underwent left knee surgery in October of 2014 (Tr. 41) and has been wearing back-braces, knee-braces, and orthotic shoes for a number of years (Tr. 46, 50, 51). He has also participated in one-on-one counseling for ongoing depression since around 2010. (Tr. 47-48). Riley testified that he doesn't have any hobbies and doesn't do much socializing except with a few neighbors. (Tr. 58).

Riley applied for Disability Insurance Benefits ("DIB") under Title II claiming that he became disabled on August 9, 2014, as a result of short term memory loss, depression, foot pain, leg pain, knee pain, migraines, hip pain, and sleep apnea. (Tr. 192, 228). His application was denied initially (Tr. 98) and on reconsideration (Tr. 115). On May 12, 2016, Administrative Law Judge Candace A. McDaniel ("ALJ") conducted a hearing in Louisville, Kentucky. (Tr. 31). Riley appeared in person and was represented by counsel. (*Id.*). Gail Franklin, an impartial vocational expert, also appeared at the hearing. (*Id.*). The ALJ issued an unfavorable decision on July 11, 2016. (Tr. 26).

The ALJ applied the traditional five-step sequential analysis promulgated by the Commissioner, 20 C.F.R. § 404.1520; *Kyle v. Comm'r of Soc.Sec.*, 609 F.3d 847, 855 (6th Cir. 2010), and found as follows. First, Riley did not engage in substantial activity during the period from his alleged onset date of August 9, 2014, through his date last insured of December 31, 2014. (Tr. 17). Second, Riley had the severe impairments of "obesity, osteoarthritis of the knees with right knee surgery, degenerative disc disease of the lumbar spine, bilateral hallux valgus and degenerative joint disease of the great toes, bilateral peas planus with plantar fasciitis and spurs, and depression." (*Id.*). Third, none of Riley's impairments or combination of impairments met or medically equaled the severity of a listed impairment from 20 C.F.R. Pt. 404, Subpt. P, App'x 1.

(*Id.*). Fourth, Riley had the residual functional capacity ("RFC") to perform sedentary work with the following limitations:

> he needs to use a cane for ambulation and he must be allowed to alternate between a seated and standing position every 30 to 60 minutes taking 1 to 3 minutes to change positions without leaving the workstation. He may not climb ladders, ropes, scaffolds, or stairs, he may not kneel or crawl, but he may occasionally stoop, crouch, and climb ramps. He may not have concentrated exposure to vibrations, extremes of cold, heat, wetness, or humidity, or dust, fumes, gases, and other pulmonary irritants. He may not have any exposure to hazards such as unprotected heights or operation of moving machinery that cuts or grinds and that fails to stop with the loss of human contact. He can understand and remember simple and routine tasks and he can sustain attention and concentration for such tasks in 2 hour segments. He can interact appropriately with supervisors and coworkers but he can tolerate only occasional public interaction. He can tolerate routine changes in the work setting.

(Tr. 19-20). Additionally, Riley was unable to perform any past relevant work through his date last insured. (Tr. 24). Fifth and finally, considering Riley's age, education, work experience, and RFC, there were jobs that existed in significant numbers in the national economy that he could have performed. (Tr. 25).

Riley appealed the ALJ's decision. (Tr. 5-6) The Appeals Council declined review. (Tr. 1). At that point, the denial became the final decision of the Commissioner, and Riley appealed to this Court. (DN 1).

## Standard of Review

When reviewing the Administrative Law Judge's decision to deny disability benefits, the Court may "not try the case de novo, nor resolve conflicts in the evidence, nor decide questions of credibility." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (citations omitted). Instead, the Court's review of the Administrative Law Judge's decision is limited to an inquiry as to whether the Administrative Law Judge's findings were supported by substantial

evidence, 42 U.S.C. § 405(g); *Foster v. Halter*, 279 F.3d 348, 353 (6th Cir. 2001) (citations omitted), and whether the Administrative Law Judge employed the proper legal standards in reaching her conclusion. *See Landsaw v. Sec'y of Health & Human Servs.*, 803 F.2d 211, 213 (6th Cir. 1986). Substantial evidence exists "when a reasonable mind could accept the evidence as adequate to support the challenged conclusion, even if that evidence could support a decision the other way." *Cotton v. Sullivan*, 2 F.3d 692, 695 (6th Cir. 1993).

Analysis

A. Finding No. 5 Residual Functional Capacity

Riley mounts three challenges to the ALJ's Finding No. 5, the residual functional capacity ("RFC") determination. (DN 16-1, at pp. 12-20). The RFC finding is an Administrative Law Judge's ultimate determination of "the most a claimant can do" despite his physical and mental limitations. 20 C.F.R. §§ 416.945(a)(1), 416.946. The Administrative Law Judge bases the RFC finding on a review of the record as a whole, including a claimant's credible testimony and the opinions from a claimant's medical sources. 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1).

(1) Basis for the ALJ's RFC

Riley first argues that the ALJ formulated her RFC finding based on raw medical data unguided by any expertise of medical professionals. (DN 16-1, at pp. 13-17). Riley believes the ALJ erred in rejecting all of the medical opinions in the record, failing to develop the record, and not seeking an additional expert opinion as to his combination of obesity, lower back pain, and lower extremity impairments. (*Id.*). In response, the Commissioner clarifies that the ALJ did base her RFC finding, in part, on medical opinion evidence, by giving little weight to the state agency

4

examiners' opinions and the Veteran's Administration ("VA") rating of 100% disability and partial weight to the VA Hospital assessments. (DN 19, at p. 5).

An Administrative Law Judge is not bound to accept the opinion or theory of any medical expert, "but may weigh the evidence and draw his own inferences." *Simpson v. Comm'r of Soc. Sec.*, 344 F. App'x 181, 194 (6th Cir. 2009) (citations omitted). Even so, the Administrative Law Judge is not permitted to "substitute h[er] own medical judgment for that of the treating physician," *id.* (citing *Meece v. Barnhart*, 192 F. App'x 456, 465 (6th Cir. 2006)), and may not make her own independent medical findings. *Rohan v. Chater*, 98 F.3d 966, 970 (7th Cir. 1996) (stating "ALJs must not succumb to the temptation to play doctor") (citations omitted). While a "written evaluation of every piece of evidence" is not required, the Administrative Law Judge must "sufficiently articulate h[er] assessment of the evidence" to assure that she considered the important evidence and to enable the Court to trace a path of her reasoning. *Id.* at 971 (quoting *Carlson v. Shalala*, 999 F.2d 180, 181 (7th Cir. 1993) (per curiam) (quoting *Stephens v. Heckler*, 766 F.2d 284, 287 (7th Cir. 1985))).

As an initial matter, the ALJ did not "discount[] all of the expert opinion evidence provided in the record," as Riley alleges. The ALJ afforded "partial weight" to the VA Hospital assessments and "little weight" to the 100% VA disability rating and to the opinions of the state agency medical and psychological consultants.

Regarding the VA Hospital assessments,[1] the ALJ highlighted the conclusions that Riley would have pain with prolonged standing, walking, carrying, or bending at the knee and may be able to do light sedentary work with frequent breaks to avoid prolonged sitting. Based on those

---

1 The collective "VA Assessments" include separate evaluations of Riley's (1) knee and lower leg conditions; (2) back (thoracolumbar spine) conditions; (3) foot conditions, including flatfoot (pes planus); (4) hypertension; and (5) hip and thigh conditions.   (Tr. 1288-1353).

conclusions, the ALJ provided Riley with the most restrictive exertional limitation under the Regulations and accordingly reduced his exposure to prolonged sitting, standing, or walking. (Tr. 23). But because the VA Hospital assessments declined to set out specific lifting limitations and quantify other limitations, the ALJ found the opinion had "limited value in reaching a function-by-function assessment" and afforded it partial weight. (*Id.*). Later in her RFC analysis, the ALJ explained that based on the VA assessment she provided additional restrictions on Riley for climbing, including stairs and his ability to ascend/descend steps. (*Id.*). It is clear from the ALJ's analysis that she did not simply discount the VA Hospital Assessments but rather adopted certain restrictions and determined that such assessments, as a whole, did not provide a function-by-function analysis helpful to the RFC determination.

Moreover, the ALJ's assignment of "little weight" to Dr. Mukherjee and Dr. Saranga's (the state agency physician's) opinions resulted from her determination that Riley's RFC should be more restrictive than either state agency opinion. The ALJ did not adopt Dr. Mukherjee's RFC of medium work or Dr. Saranga's RFC of light work because she felt, based on the record evidence involving Riley's knee and foot impairments, that Riley could at most perform the RFC of sedentary work with exertional and environmental limitations. In other words, the ALJ rejected the functional limitations of the state agency physicians by imposing a more restrictive RFC determination. *See Mosed v. Comm'r of Soc. Sec.*, No. 2:14-cv-14357, 2016 WL 6211288, at *7 (E.D. Mich. Jan. 22, 2016) (claimant's "argument that the ALJ erred in assessing a *more restrictive RFC* than that opined by the State agency consultants is curious and unavailing") (citing *Warren v. Comm'r of Soc. Sec.*, No. 13-cv-13523, 2014 WL 3708565, at *4 (E.D. Mich. July 28, 2014) (affirming the ALJ's RFC as supported by substantial evidence, in part because the ALJ assessed a more restrictive RFC than that opined by the claimant's physicians)). If anything, the ALJ's

discounting of the state agency opinions benefitted Riley's case and, therefore, does not constitute error.

Although Riley cites to a number of cases where district courts found an Administrative Law Judge improperly discounted expert opinion evidence and formulated an RFC based on raw medical data, such cases are distinguishable from the present circumstances. For instance, in *Deskin v. Comm'r of Soc. Sec.*, 605 F. Supp. 2d 908 (N.D. Ohio 2008), the court found the Administrative Law Judge decided the case based on his own analysis after giving only passing mention to the only medical opinion in the record. Similarly, in *Steadman v. Comm'r of Soc. Sec.*, No. 1:10-cv-801, 2011 WL 6415512, at *12 (S.D. Ohio Nov. 14, 2011), the court noted the record was devoid of any physician opinion or physical RFC from a state agency medical consultant and, therefore, the Administrative Law Judge failed to articulate a basis for his RFC.

Riley's case is not analogous. Again, the record here includes the VA hospital assessments, two state agency physician opinions, three state agency psychological consultant opinions, and a VA disability determination. Although the ALJ did not adopt any one of those opinions in full in formulating Riley's RFC, she explained in detail why she gave partial or little weight to each assessment. Additionally, the ALJ summarized Riley's medical records from the relevant five-month time period and beyond, including: Riley's arthritis and degeneration of the knees (Ex. B3F, B9F), right knee arthroscopic in 2008 and left knee surgery in 2014 (Ex. B12F), foot examinations revealing hallux valgus and pes planus with painful range of motion (Ex. B3F), obesity with a BMI upwards of 44 (Ex. B7F), an electromyography in April of 2015 showing no evidence of radiculopathy or peripheral neuropathy (Ex. 14F), neurologic examinations revealing intact sensation and strength in all extremities (Exs. B7F, B8F, B9F, B10F, B12F), orthopedic exams of the knee showing no laxity in 2014 and 2015 (Ex. B12F), and Riley's reports of using a

7

cane when he had to (Ex. B7F). (Tr. 22). Based on these considerations, the Court here is not left speculating on the method utilized or the evidence relied upon by the ALJ in arriving at her RFC determination. The ALJ did not base her RFC determination on her own independent medical findings.

Neither is Riley's argument that the record was undeveloped persuasive. The regulations governing Social Security claims specify that "[a]n ALJ has discretion to determine whether further evidence, such as additional testing or expert testimony, is necessary." *Foster v. Halter*, 279 F.3d 348, 355 (6th Cir. 2001) (citing 20 C.F.R. §§ 404.1517, 416.917). While the Administrative Law Judge has the responsibility to make "full inquiry" into the issue before rendering a decision, 20 C.F.R. § 416.1444, such inquiry does not require a consultative examination at government expense "unless the record establishes that such an examination is *necessary* to enable the administrative law judge to make the disability decision." *Landsaw*, 803 F.2d at 214 (quoting *Turner v. Califano*, 563 F.2d 669, 671 (5th Cir. 1977) (emphasis in original); *see also* 20 C.F.R. § 404.1519a.

After reviewing the ALJ's RFC determination and the record, the Court finds it was not necessary for the ALJ to obtain a consultative examination before making her determination. Records consistently noted Riley's morbid obesity (Tr.737, 740 (explaining that weight loss would help his back), 858 ("stress weight loss, better eating"), 880, 892, 896, 902, 954, 1305 (left knee instability aggravated by obesity)), Riley's lower back pain (Tr. 739, 880-81, 1018-19, 1037, 1275, 1306-1309, 1387, 1391, ), and Riley's lower extremity impairments (Tr. 739-40, 882, 894, 898, 942, 956, 968-69, 1215, 1288-1303). The medical opinions in the record also addressed these impairments, and the ALJ discussed both the impairments individually and in combination and the experts' evaluation of such impairments in her opinion. The Court finds substantial evidence in the

8

record existed on which the ALJ based her RFC determination and no additional consultative examination was needed.

## (2) VA Disability Determination

Riley next takes issue with the ALJ's analysis of his 100% VA disability rating. (DN 16-1, at p. 17). In Finding No. 4, the ALJ acknowledged Riley's 100% VA disability rating and afforded it "little weight." She explained that "[t]he rating system applied under the VA model has little resemblance to a disability determination under [the Social Security] Regulations" and stated that it had no authoritative weight over her decision. (Tr. 23). She clarified:

> The percentages assigned are based exclusively on whether a particular finding exists as opposed to the functional impact the finding may be having; the latter being paramount in assessing an individual's residual functional capacity. So, for instance, where the VA will assess a 20% impairment to each knee for a 10 to 19 degree loss of motion, the undersigned is more concerned with how said loss of motion will impact his ability to perform work activities.

(*Id.*). The ALJ also noted both that a 0% was given for Riley's hallux valgus meaning the VA found no functional limitations or compensable symptoms in that regard and that Riley was treated on multiple occasions without restriction by the VA after being seen for back pain. (*Id.*).

Riley relies heavily on the Sixth Circuit's unpublished opinion in *LaRiccia v. Comm'r of Soc. Sec.*, 549 F. App'x 377, 388 (6th Cir. Dec. 13, 2013) in arguing the ALJ's analysis does not "accurately reflect the approaches taken in the SSA and VA disability systems." (DN 16-1, at p. 17). . In *LaRiccia*, the court found that although the Administrative Law Judge provided reasons for the weight afforded to the VA disability determination it could not credit such reasons based on two factors. 549 F. App'x at 388. First, the court found the Administrative Law Judge erred in discounting the VA assessment because "it included conditions not deemed severe in the social security context" because the VA rating reflects the cumulative effect of all of the claimant's

9

impairments. *Id.* Second, the court disagreed with the Administrative Law Judge's suggestion that each condition considered by the VA must be totally disabling, standing alone, for the VA assessment to be relevant. *Id.*

Here, the Court does not find similar errors in the ALJ's reasoning. The ALJ focused on the well-established fact that the VA disability rating process is substantively different from the Social Security disability determinations. The ALJ's comparison of the VA disability standards to the Social Security disability standards is accurate. The VA relies on criteria that is "independent and distinct" from that of the Social Security Act when assessing disability. *Deloge v. Comm'r of Soc. Sec.*, 540 F. App'x 517, 519 (6th Cir. 2013). Courts within the Sixth Circuit have noted that claimants seeking disability under the Social Security Act are subject to a more stringent standard than those under the Department of Veterans Affairs. *See Cantrell v. Colvin*, 3:13cv-00235, 2015 WL 926640, at *18 (M.D. Tenn. Mar. 4, 2015) (citing *Paul v. Astrue*, 827 F. Supp. 2d 739, 743 (E.D. Ky. 2011)). As outlined above, the ALJ's explanation of the two distinct standards mirrors these principles.

Additionally, it was not error under the reasoning of *LaRiccia* for the ALJ to mention the VA's 0% rating for Riley's hallux valgus, "meaning not only did the VA not assess any functional limitations but they did not even find compensable symptoms." (Tr. 23). While *LaRiccia* stands for the proposition that the VA rating reflects a cumulative effect of the impairments, the ALJ in Riley's case mentioned the 0% hallux valgus rating "[a]s an aside" and did not state that she discounted the VA's overall 100% rating on that basis.

Riley also argues the ALJ's attempt at demonstrating the differences in the two systems by giving a single example relating to loss of motion in a joint is a distinction without a difference. (*Id.* at pp. 17-18). The Court is again unpersuaded. Regardless of how the ALJ described the

differences between the two standards, the VA decision is not binding on the SSA. *See* 20 C.F.R. § 404.1504 (noting that a disability determination made by another governmental agency is based on its rules and is not binding on the SSA); *see also* SSR 06-03p, 2006 WL 2329939, at *6-7. The Sixth Circuit has explained that a VA disability rating is "entitled to consideration" but is not entitled to any particular weight. *Ritchie v. Comm'r of Soc. Sec.*, 540 F. App'x 508, 510-11 (6th Cir. 2013). A VA disability rating is "only one factor to be considered in making a social security disability finding." *Id.* at 511. Regardless of the weight afforded, an Administrative Law Judge should explain the consideration given to the VA decision. *See LaRiccia v. Comm'r of Soc. Sec.*, 549 F. App'x 377, 388 (6th Cir. Dec. 13, 2013) (quoting Soc. Sec. Ruling 06-03p, 2006 WL 2329939, at *6). The ALJ here fulfilled her obligations by identifying reasons why the VA rating was not persuasive evidence of disability. The ALJ's assignment of "little weight" to the VA disability decision, therefore, is supported by substantial evidence.

### (3) Credibility Determination

Riley next argues that ALJ's adverse credibility determination was the product of legal error and was not supported by substantial evidence in the record. (DN 16-1, at pp. 18-19). According to Riley, the ALJ erred by (1) using boilerplate language in the credibility analysis; (2) mischaracterizing his treatment; (3) failing to offer record citations to support his characterization; and (4) failing to consider his "admirable work history . . . as a 20-year veteran of the U.S. Army who became 100% disabled following his service." (*Id.* at pp. 19-20). The Commissioner responds that the ALJ appropriately discussed the credibility standard, summarized Riley's subjective allegations, and determined his allegations were not believable to the extent they exceed the limitations described in the RFC. (DN 19, at p. 7).

An Administrative Law Judge properly may consider the credibility of a claimant when evaluating the claimant's subjective complaints, and the federal courts will accord "great deference to that credibility determination." *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 392 (6th Cir. 2004). When the Administrative Law Judge evaluates credibility, a claimant's statement that he is experiencing pain or other symptoms will not, taken alone, establish that he is disabled. *See* 20 C.F.R. § 404.1529(a); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 530 (6th Cir. 1997); *Duncan v. Sec'y of Health & Human Servs.*, 801 F.2d 847, 853 (6th Cir. 1986). There must be medical signs and laboratory findings which show the existence of a medical impairment that could reasonably be expected to produce the pain alleged. *Walters*, 127 F.3d at 530; *Duncan*, 801 F.2d at 854. In making her evaluation, the Administrative Law Judge considers all the evidence of record, as well as a non-exhaustive list of factors from Social Security Ruling 16-3p: (1) evidence of daily activities; (2) the location, duration, frequency and intensity of pain; (3) factors that precipitate and aggravate symptoms; (4) medication taken and any resulting side effects; (5) treatment other than medication; (6) any other measures taken to alleviate the pain; and (7) any other factors concerning a claimant's functional limitations due to pain. Social Sec. Ruling 16-3p, 2016 WL 1119029, at *7 (Mar. 16, 2016); *see* 20 C.F.R. §§ 404.1529(c)(2), (3), 416.929(c)(2), (c)(3).

Courts within the Sixth Circuit have also noted that an Administrative Law Judge is "not required to discuss every [credibility] factor or conduct a factor-by-factor analysis." *Carsten v. Comm'r of Soc. Sec.*, No. 15-14379, 2017 WL 957455, at *4 (E.D. Mich. Fed. 23, 2017) (quoting *Pratt v. Comm'r of Soc. Sec.*, No. 1:12-cv-1084, 2014 WL 1577525, at *3 (W.D. Mich, Apr. 1, 2014) (collecting Sixth Circuit authority)); *Cherry v. Comm'r of Soc. Sec.*, No. 1:12-cv-00880, 2014 WL 972157, at *4 (S.D. Ohio Mar. 12, 2014). Rather, the Administrative Law Judge's

credibility determination "must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 248 (6th Cir. 2007).

Here, substantial evidence in the record supports the ALJ's credibility determination. Contrary to Riley's assertions, the ALJ did not merely use boilerplate analysis in discounting his credibility. *See Hernandez v. Comm'r of Soc. Sec.*, 644 F. App'x 468, 477 (6th Cir. 2016) (citing *Cox v. Comm'r of Soc. Sec.*, 615 F. App'x 254, 260 (6th Cir. 2015)). Reviewing courts have generally found that despite the use of boilerplate language, no error results when the Administrative Law Judge spends significant time considering the medical evidence in the record and the claimant's testimony. *Webster v. Astrue*, No. 5:12-130-DCR, 2012 WL 5384684, at *6 (E.D. Ky. Nov. 1, 2012); *see also Forrest v. Comm'r of Soc. Sec.*, 591 F. App'x 359, 366 (6th Cir. 2014). Riley is correct that the ALJ here used some boilerplate language from the *Duncan* case and the Regulations in describing the applicable credibility standards and by stating that Riley's statements concerning the intensity, persistence and limiting effects of [his] symptoms are not entirely consistent with the medical evidence in the record *for the reasons explained in this decision.*" (Tr. 21 (emphasis added)). But the ALJ subsequently offered several reasons for discounting Riley's credibility separate from the boilerplate language and spent significant time evaluating Riley's allegations and the medical evidence.

First, the ALJ discussed Riley's allegations of physical and mental impairments, summarized the record evidence, and concluded that "the longitudinal record does not establish entitlement to disability between the relevant dates[.]" (Tr. 22). The ALJ went on to discuss inconsistencies in the medical evidence. For instance, she noted a report of "disc bulging" in Riley's medical records, but remarked there were no studies of his back during the relevant time

13

period that indicate a higher degree of limitation than what is described in the RFC. (*Id.*). The ALJ also pointed to neurological exams near the relevant time window showing intact sensation and strength in all extremities and that orthopedic exams of his knee showed no laxity in 2014 and 2015. (*Id.* (citing Exs. B7F, B8F, B9F, B10F, B12F, B14F)).[2] After reviewing this medical evidence against Riley's complaints, the ALJ accepted that Riley's knee and foot pains, combined with his obesity, significantly reduced his ability to sit, stand or walk for extensive periods of time, but clarified that the evidence of knee pain, crepitus, and reduced motion do not support a greater limitation. (*Id.*). Because of the limited objective evidence and neurologic findings as to Riley's back pain, the ALJ indicated the RFC was appropriately accommodating. (*Id.*). Where an Administrative Law Judge finds "contradictions among the medical reports, claimant's testimony and other evidence[,]" as the ALJ did here, it is proper to discount the credibility of the claimant. *Winning v. Comm'r of Soc. Sec.*, 661 F. Supp. 2d 807, 822 (N.D. Ohio 2009) (citing *Walters*, 127 F.3d 525, 531 (6th Cir. 1997)).

Beyond the inconsistencies in medical evidence, the ALJ also discussed inconsistencies in Riley's subjective testimony as to his daily activities. Specifically, the ALJ cited to Riley's report that he needed significant help from his wife with doing chores such as grocery shopping; whereas, Riley told medical providers that he did his own grocery shopping, cooked from home, and walked for 10 minutes on his treadmill. (*Id.* (citing Exs. B3E, B14F)). The ALJ emphasized that medical providers routinely noted Riley's ability "to maintain independent activities of daily living were among his strengths. (*Id.* (citing Exs. B7F, B12F).

---

2 One of Riley's arguments against the ALJ's credibility determination was that the ALJ offers no record citations for the characterization of his treatment. As demonstrated by the previous citation, however, the ALJ frequently cited to Exhibits in the record to support her RFC determination.

Riley argues that the ALJ mischaracterized his treatment, "which included multiple surgical interventions and led the VA to adjudicate him 100% disabled" and cites to Sections II(C) and (D) of his Fact and Law Summary for support. (DN 16-1, at p. 19). In Sections II(C) and (D), Riley summarized the treatment records for his physical and mental impairments and the opinion evidence from the record. Riley, however, fails to demonstrate how the ALJ mischaracterized his medical treatment in light of his summaries of the evidence. Additionally, many of the records Riley cites to either predated or postdated the relevant five-month period of disability at issue here. After reviewing the ALJ's decision and the record evidence, the Court finds the ALJ did not mischaracterize Riley's treatment during the five-month alleged period of disability.

With respect to Riley's allegation that the ALJ erred in not discussing his "admirable work history" as a 20-year veteran, the Court is not persuaded. Riley cites to SSR 16-3P and *Rivera v. Schweiker*, 717 F. 2d 719, 725 (2d Cir. 1983) but does not explain how these sources support his position. In *Rivera*, the Second Circuit noted that "[a] claimant with a good work record is entitled to substantial credibility when claiming an inability to work because of a disability." *Id.* (citing *Singletary v. Sec'y of Health, Education, & Welfare*, 623 F.2d 217, 219 (2d Cir. 1980)). Other courts, however, have found the Second Circuit's above statement from *Rivera* to be an incomplete summary of the law. *Montaldo v. Astrue*, No. 10 Civ. 6163 (SHS), 2012 WL 893186, at * 17-18 (S.D.N.Y. Mar. 15, 2012). The Seventh Circuit has clarified that "work history is just one factor among many, and it is not dispositive" in determining a claimant's credibility. *Loveless v. Colvin*, 810 F.3d 502, 508 (7th Cir. 2016) (citing *Schaal v. Apfel*, 134 F.3d 496, 502 (2d Cir. 1998)). Put otherwise, an Administrative Law Judge is not obligated to find a claimant credible "simply because he had a strong work history[.]" *Lanham v. Astrue*, No. 4:07CV78-J, 2008 WL 4500297, at *6 (W.D. Ky. Sept. 29, 2008). While a claimant's positive work history, without a

doubt, can bolster a claimant's credibility, an Administrative Law Judge "is not required to explicitly consider that work history." *McQueen v. Astrue*, No. 12-107-ART, 2012 WL 12883968, at *3 (E.D. Ky. Dec. 13, 2012).

As described above, the ALJ here found some merit to Riley's physical limitations and accounted for them in his RFC finding by limiting him to the most restrictive functional level of sedentary work. The ALJ's silence as to Riley's work history does not negate the substantial evidence supporting her slightly discounted credibility finding. *See Loveless*, 810 F.3d at 508.

### (4) Concentration, Persistence, and Pace Limitations

Riley lastly argues that the ALJ erred in his Step Five finding by not adequately accounting for his moderate limitations in concentration, persistence, and pace.[3] (DN 16-1, at p. 20). Riley cites to *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 516 (6th Cir. 2010) to argue that moderate limitations in concentration, persistence and pace are not synonymous with "simple" or "unskilled" labor. Riley feels the ALJ improperly relied on the VE's testimony because the ALJ's colloquy with the VE contained the same inaccurate portrayal of his concentration, persistence, and pace abilities as the RFC determination. (DN 16-1, at pp. 20-21). In opposition, the Commissioner challenges that *Ealy* is not applicable to Riley's case and argues the ALJ's restrictions of "simple, routine, repetitive tasks" sufficiently accounted for Riley's moderate limitations in concentration, persistence, and pace. (DN 19, at pp. 9-10).

In evaluating the Paragraph B criteria of Listing 12.04 at step three of the evaluation, the ALJ determined that Riley had "moderate limitation" in concentration, persistence, and pace. (Tr. 19). Later, in her RFC determination, the ALJ indicated that Riley could "understand and

---

3 Although Riley states he is challenging "Step Five" of the ALJ's decision, the Court finds his final argument is again challenging the ALJ's RFC determination.

remember simple and routine tasks and . . . sustain attention and concentration for such tasks in 2 hour segments." (Tr. 20). The ALJ explained that Riley's "depression in combination with his pain levels supports the need for simple and repetitive work as described above that has only occasional public contact." (Tr. 22).

These findings do not contradict one another as Riley alleges. In *Smith-Johnson v. Comm'r of Soc. Sec.*, the court found that an Administrative Law Judge's limitation of the claimant to "simple, routine, and repetitive tasks adequately convey[ed the claimant's] moderately-limited ability 'to maintain attention and concentration for extended periods.'" 579 F. App'x 426, 437 (6th Cir. 2014). Further, it seems that Riley is attempting to take a portion of the ALJ's step three finding out of context and substitute it for the ALJ's factual finding in the RFC determination. *See Hycoop v. Comm'r of Soc. Sec.*, No. 1:15-CV-795, 2016 WL 4500794, at *3 (W.D. Mich. Aug. 29, 2016) (citations omitted); *see also Allen v. Colvin*, No. 3:15-00947, 2016 WL 7664310, at *4 (M.D. Tenn. Nov. 17, 2016); *Koster v. Colvin*, No. 1:13cv2719, 2015 WL 413795, at *5 (N.D. Ohio Jan. 30, 2015). Riley's attempted substitution is inappropriate because the Paragraph B criteria used in determining whether a claimant meets or equals a listed impairment "'are not an RFC assessment,' but rather are 'used to rate the severity of the mental impairment(s) at steps 2 and 3 of the sequential evaluation process.'" *Hycoop,* 2016 WL 4500794, at *4 (quoting Social Sec. Ruling 96-8p, 1996 WL 374184, at *4 (July 2, 1996)). As such, the ALJ's findings at earlier steps in the sequential analysis do not undermine her RFC determination. *See Allen*, 2016 WL 7664310, at *4 ("the ALJ did not err by not incorporating his concentration, persistence, and pace conclusions at step three into his RFC assessment").

Riley's reliance on *Ealy* is also misplaced. *Ealy* stands for the proposition that, "[i]n order for a vocational expert's testimony in response to a hypothetical question to serve as substantial

evidence in support of the conclusion that a claimant can perform other work, the question must accurately portray a claimant's physical and mental limitations." 504 F.3d at 516. Here, however, the ALJ's first hypothetical to the VE – on which the ALJ's RFC assessment was based – included the following non-exertional considerations: "Can understand, remember simple, routine tasks. Could interact appropriately, at least occasionally with the public. Could maintain attention, concentration for a two-hour segment throughout an eight-hour work day, and within that setting could tolerate routine changes." (Tr. 62). As noted above, the ALJ's RFC assessment included the following non-exertional considerations: "[Riley] can understand and remember simple and routine tasks and he can sustain attention and concentration for such tasks in 2 hour segments. He can interact appropriately with supervisors and coworkers but he can tolerate only occasional public interaction. He can tolerate routine changes in the work setting." (Tr. 20). A side-by-side comparison of the two statements shows they are virtually identical. In other words, the hypothetical posed by the ALJ to the VE accurately portrayed plaintiff's mental limitations set forth in the ALJ's RFC assessment. *See Allen*, 2016 WL 7664310, at *4. *Ealy*, as a result, is not applicable to Riley's case, and the VE's response served as substantial evidence to support the ALJ's decision.

## ORDER

**IT IS HEREBY ORDERED** that the final decision of the Commissioner is **AFFIRMED.**

This is a final and appealable Order and there is no just cause for delay.

Copies: Counsel